SECOND DIVISION
September 30, 2008

No. 1-07-2041

| | | |
|---|---|---|
| WILLIAM A. TARSITANO, On Behalf and | ) | |
| For the Benefit of all Taxpayers of Township | ) | Appeal from the |
| High School District 211, | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, |
| | ) | |
| v. | ) | |
| | ) | |
| THE BOARD OF EDUCATION OF TOWNSHIP | ) | |
| HIGH SCHOOL DISTRICT 211, a Political | ) | Honorable |
| Body of the State of Illinois, | ) | Philip J. Bronstein, |
| | ) | Judge Presiding. |
| Defendant- Appellee. | ) | |

JUSTICE SOUTH delivered the opinion of the court:

This appeal arises from the trial court's grant of summary judgment in favor of defendant, Board of Education of Township High School District 211 (the District), and against plaintiff, William A. Tarsitano, holding that the District's no-bid energy vendor contracts were exempt from competitive bidding under the Illinois School Code (105 ILCS 5/1-1 *et seq.* (West 2006)).

Plaintiff, in his name and on behalf and for the benefit of all taxpayers of Township High School District 211, filed a declaratory judgment action against the District seeking an injunction to prohibit it from contracting with the Illinois Energy Consortium, Inc. (IEC), for the purchase of electricity and natural gas outside of the competitive bidding requirements of the School Code.

The facts as indicated in plaintiff's declaratory judgment complaint are as follows:

Plaintiff is a resident of the State of Illinois, a property owner and taxpayer within Township High School District 211. The District is a political body of the State of Illinois, created by statute. The District is responsible for awarding contracts for its purchase of supplies, materials and/or work for the following high schools located within Township High School District 211: Conant High School, Fremd High School, Hoffman Estates High School, Palatine High School, and Schaumburg High School. Among the contracts controlled by the District are those for the purchase of electricity and natural gas, which involve an annual expense of over $2 million.

According to plaintiff, until recently, the District purchased electricity from Commonwealth Edison as a "Power Purchase Option" (PPO), which provided certain cost benefits to it. The District purchased its natural gas from NICOR until very recently. In February 2006, the District began to consider other suppliers of electricity and natural gas, and in April 2006, the District began to meet privately with at least two vendors of electricity and natural gas. The District subsequently met with a representative from the IEC, which describes itself as a not-for-profit energy consortium. The governing members of the IEC include former superintendents or administrators of school districts. Plaintiff alleged that as a public body, the District was subject to the provisions of the School Code, which provided that all contracts for the purchase of supplies, materials, or work that involved an expenditure in excess of $10,000 must be awarded after a competitive bidding process. See 105 ILCS 5/10-20.21 (West 2006).

Plaintiff further alleged that electricity and natural gas were commodities or materials or supplies in that they were economically procurable from more than one supplier and/or company, and their purchase must comply with the statute. According to plaintiff, the District failed to comply with the competitive bidding requirements of section 10-20.21 and the

subsequent three-year contract which the District entered into with the IEC violates applicable law and is, therefore, void.

On January 10, 2007, plaintiff filed a motion for summary judgment on the grounds that the District's energy contracts with the IEC were void because the District failed to publicly bid the contracts as required by the School Code and the exemption in section 10-20.21(a)(xiii) was inapplicable since electricity and natural gas are now economically procurable from more than one source.

The District filed a cross-motion for summary judgment on April 2, 2007, on the grounds that subsection (xiii) of section 10-20.21(a) of the School Code exempts any contracts for electricity and natural gas from the bidding process. 105 ILCS 5/10-20.21(a)(xiii) (West 2006). The District further maintained it was undisputed that the IEC offered the lowest contract price.

After a hearing, the trial court denied plaintiff's motion for summary judgment and granted defendant's motion for summary judgment on June 22, 2007, finding that competitive bidding of the District's energy contracts was not required.

Plaintiff has raised the following issue for consideration on appeal: whether the trial court erred in granting the District's motion for summary judgment on the basis that the District's no-bid vendor contracts are exempt from bidding pursuant to section 10-20.21(a)(xiii) of the School Code (105 ILCS 5/10-20.21(a)(xiii) (West 2006)). Specifically, plaintiff contends that in order to be exempt from competitive bidding, utility contracts must be considered goods or services which are economically procurable from only one source.

Summary judgment should only be granted if the pleadings, depositions, and the admissions on file, together with affidavits, if any, present no genuine issue of material fact and

that the moving party is entitled to judgment as a matter of law. See 735 ILCS 5/2-1005(c) (West 2006). The reviewing court takes all well-pleaded facts as true and interprets all well-pleaded allegations in the light most favorable to the plaintiff. McMahon v. City of Chicago, 339 Ill. App. 3d 41, 45 (2003). While use of summary judgment is encouraged under Illinois law to aid in the expeditious disposition of a lawsuit (Purtill v. Hess, 111 Ill. 2d 229, 240 (1986)), it is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt (Quality Lighting, Inc. v. Benjamin, 227 Ill. App. 3d 880, 883-84 (1992)).

In appeals from summary judgment rulings, we conduct a *de novo* review. Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons, 315 Ill. App. 3d 552, 559 (2000). The reviewing court must construe all evidence strictly against the movant and liberally in favor of the nonmoving party. Atlantic Mutual, 315 Ill. App. 3d at 559. Where the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, summary judgment should be granted. See 735 ILCS 5/2-1005(c) (West 2006).[1] If reasonable persons could draw different inferences from undisputed facts, summary judgment should be denied. Atlantic Mutual, 315 Ill. App. 3d at 559.

The Board of Education has only such powers as are conferred upon it by the legislature.

---

[1]We note that the standard for granting summary judgment is stated incorrectly in Atlantic Mutual, where it states only that the moving party is entitled to judgment as a matter of law where the pleadings, depositions and affidavits show that there is no genuine issue of material fact.

<u>Premier Electrical Construction Co. v. Board of Education of the City of Chicago</u>, 70 Ill. App. 3d 866, 870 (1979). The powers of the Board with reference to awarding contracts are codified in section 10-20.21 of the School Code. 105 ILCS 5/10-20.21 (West 2006). The statute at issue in the instant case states as follows, in pertinent part:

"(a) To award all contracts for purchase of supplies, materials or work or contracts with public carriers for transportation of pupils involving an expenditure in excess of $10,000 to the lowest responsible bidder, considering the conformity with specifications, terms of delivery, quality and serviceability, after due advertisement, except the following: ***

(xiii) contracts for goods or services which are economically procurable from only one source, such as for the purchase of magazines, books, periodicals, pamphlets and reports, and for utility services such as water, light, heat, telephone or telegraph;

***." 105 ILCS 5/10-20.21(a)(xiii) (West 2006).

This court has found no Illinois cases to date which interpret this specific provision of the School Code. " 'In construing a statutory provision not yet judicially interpreted, a court is guided by both the plain meaning of the language in the statute as well as legislative intent. [Citations.] The statutory language is the best indication of the drafters. [Citations.]' " <u>Board of Education of Rockford School District No. 205, Winnebago-Boone Counties v. Regional Board of School Trustees of Boone and Winnebago Counties</u>, 135 Ill. App. 3d 486, 489-90 (1985), quoting <u>Tisoncik v. Szczepankiewicz</u>, 113 Ill. App. 3d 240, 245 (1983).

Although both parties claim that the language of the statute is not ambiguous, their arguments and reason for being in this court belie that fact. See Board of Education of Rockford, 135 Ill. App. 3d at 490. "Ambiguity" is defined as "the condition of admitting of two or more meanings, of being understood in more than one way." Webster's Third New International Dictionary 66 (1981). Plaintiff contends that subsection (xiii) of the statute at issue exempts single-source supply purchase contracts from competitive bidding, and the "illustrative 'such as' language following the 'economically procurable from only one source' language includes a list of distinct categories of contracts that may or may not be monopoly contracts depending on the deregulated market realities in different parts of the State." On the other hand, the District contends that section 10-20.21(a)(xiii) "exempts utility contracts from the competitive bidding requirements applicable to other school purchases of supplies and materials." Accordingly, the rules of statutory construction are applicable here.

The interpretation of a statute is a question of law, subject to *de novo* review. Poullette v. Silverstein, 328 Ill. App. 3d 791, 794 (2002). The fundamental principle of statutory construction is to ascertain and give effect to the legislature's intent. Poullette, 328 Ill. App. 3d at 794. The language of the statute is the most reliable indicator of the legislature's objectives in enacting a particular law. Nottage v. Jeka, 172 Ill. 2d 386, 392 (1996).

Terms in a legislative enactment are to be given their ordinary meaning. Rushton v. O'Malley, 89 Ill. App. 3d 103, 105 (1980). If the words of the statute are clear and unambiguous, there should be no resort to extrinsic aids such as legislative history or other aids unless to give effect to the plain meaning would be contrary to the obvious intent of the legislature or lead to an absurd result. Rushton, 89 Ill. App. 3d at 105. The search for legislative

6

intent must begin with the words of the statute itself, for the legislature is presumed to have intended what it said. 2A N. Singer & J. Singer, Sutherland on Statutory Construction §46:4 (7th ed. 2007). "Moreover, words and phrases should not be construed in isolation but must be interpreted in light of other relevant provisions of the statute." Poullette, 328 Ill. App. 3d at 794-95.

The specific language at issue is contained in subsection (xiii) of section 10-20.21(a) of the School Code, which states that "contracts for goods or services which are economically procurable from only one source, such as for the purchase of magazines, books, periodicals, pamphlets and reports, and for utility services such as water, light, heat, telephone or telegraph" are exempted from bidding. 105 ILCS 5/10-20.21(a)(xiii) (West 2006).

A basic canon of statutory construction is that words should be given their plain and ordinary meaning. Advincula v. United Blood Services, 176 Ill. 2d 1, 17 (1996); see also Bruce v. First Federal Savings & Loan Association of Conroe, Inc., 837 F.2d 712, 714 (5th Cir.1988). Under the doctrine of the last antecedent, relative or qualifying words or phrases in a statute serve only to modify words or phrases which are immediately preceding, not those which are more remote. McMahan v. The Industrial Commission, 183 Ill. 2d 499, 511-12 (1998). Following that doctrine, the term "such as for the purchase of magazines, books, periodicals, pamphlets and reports" modifies the clause "contracts for goods or services which are economically procurable from only one source."

The word "and" joins the third clause "for utility services such as water, light, heat, telephone or telegraph" to the first clause, "contracts for goods or services which are economically procurable from only one source," indicating the latter is to be added to or taken

7

along with the first.  Black's Law Dictionary 86 (6th ed. 1990); <u>Advincula</u>, 176 Ill. 2d at 18.

Generally, principles of statutory construction interpret the term "and" as conjunctive rather than

disjunctive.  <u>The City of Carbondale v. Bower</u>, 332 Ill. App. 3d 928, 933 (2002).  "Conjunctive"

is defined as "a grammatical term for particles which serve for joining or connecting together."

Black's Law Dictionary 302 (6th ed. 1990).  Therefore, it appears the legislature intended that

contracts for goods and services which are economically procurable from only one source and

those for utility services are to be exempt from the competitive bidding provision of the School

Code.

Accordingly, we affirm the trial court, finding that it properly granted the District's

motion for summary judgment on the grounds that the District's no-bid vendor contracts are

specifically exempt from the competitive bidding provision of the School Code under the plain

meaning of the language used in the statute.

Affirmed.

Karnezis, P.J., and Hall, J., concur.